**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **SCOTT HANKES and EVAN THOMPSON,** individually and as Class Representatives, | |
| **Plaintiffs,** | **Case No. 1:20-CV-05328** |
| v. | |
| **KRAPILS, THE GREAT STEAK, INC., RON MUERSCH, SR., individually, RON MUERSCH, JR., individually, and TEDD MUERSCH, individually,** | **Magistrate Judge M. David Weisman** |
| **Defendants.** | |

**JOINT MOTION FOR APPROVAL OF**
**THE SETTLEMENT AGREEMENT AND RELEASE**

<table>
<tr><td><b>ATTORNEYS FOR PLAINTIFFS:</b></td><td><b>ATTORNEYS FOR DEFENDANTS:</b></td></tr>
<tr><td>

James B. Zouras
Anna M. Ceragioli
**STEPHAN ZOURAS, LLP**
100 North Riverside Plaza
Suite 2150
Chicago, Illinois 60606
(312) 233-1550
jzouras@stephanzouras.com
aceragioli@stephanzouras.com

</td><td>

Joshua D. Holleb
Michael A. Paull
Brian S. Schwartz
**Klein, Paull, Holleb & Jacobs, Ltd.**
660 LaSalle Place, Suite 100
Highland Park, IL 60035
(847) 681-9100
jdh@labor-law.com
map@labor-law.com
brian.schwartz@labor-law.com

</td></tr>
</table>

## INTRODUCTION

Plaintiffs Scott Hankes and Evan Thompson ("Representative Plaintiffs"), individually and

on behalf of 17 Opt-In Plaintiffs ("Opt-In Plaintiffs") (together with Representative Plaintiffs,

"Plaintiffs"), allege that Defendants, Krapils, The Great Steak, Inc., Ron Muersch, Sr., Ron

Muersch, Jr. and Tedd Muersch (collectively, "Defendants") did not compensate them in the

correct amount of overtime wages due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

1

201, *et seq.* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.* Plaintiffs

and Defendants (the "Parties") have agreed to settle all claims asserted by Plaintiffs pertaining to,

arising from, or associated with their FLSA and IMWL lawsuit claims.

The Parties, by and through their undersigned counsel, respectfully request that this Court

enter an order approving the Parties' proposed settlement agreement because it represents a fair

and reasonable resolution of the Parties' bona fide dispute and further state as follows:

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Procedural History

Representative Plaintiffs filed a Class and Collective Action Complaint against Defendants

in the United States District Court for the Northern District of Illinois, Eastern Division, on

September 10, 2020, on behalf of hourly-paid kitchen employees of Defendants alleging violations

of the Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law ("IMWL") ("the

Litigation"). (Dkt. No. 1)[1]. Representative Plaintiffs sought to represent themselves and all other

hourly-paid kitchen employees at Krapils as a collective action under the FLSA and a class action

under Illinois state law and Federal Rule of Civil Procedure 23. (Dkt. No. 1).

Following the drafting of mutually acceptable Notice and Consent forms, the Court granted

the issuance of a 216(b) Notice to potential class members on December 28, 2020, defining the

putative class as: "All present and former hourly paid kitchen employees of Krapils who were not

paid, in accordance with overtime laws, for hours worked over 40 hours in any given work week

between August 1, 2017 and the present." *See* **Exhibit A**, Settlement Agreement and Release of

Claims ("Settlement Agreement"). Ultimately, 17 individuals opted into the lawsuit. All the Opt-

---

[1] All docket entries prior to the consolidation of this case with the related case 1:20-cv-4898 are labeled as "Dkt. No. _." All docket entries for the docket of 1:20-cv-0489, in which this case has been consolidated, are labeled "Cons. Dkt. No. _."

In Plaintiffs signed a consent form designating the Representative Plaintiffs and Plaintiffs' counsel as their agents to make all decisions concerning the above-captioned matter.

Defendants denied and continue to deny each and every allegation and all charges of wrongdoing or liability of any kind related to the claims and contentions asserted by Representative Plaintiffs in the Litigation. Nonetheless, Defendants agreed to settle the claims asserted in this lawsuit on the terms and conditions set forth in the Settlement Agreement to avoid the burden and expense of continued litigation.

This case was reassigned from the calendar of Hon Elaine E. Bucklo to be consolidated with the related case, 1:20-cv-4898 on the calendar of Hon. Thomas M. Durkin on December 15, 2022. (Dkt. No. 49). Following the parties' consent to the jurisdiction of the Magistrate Judge, on December 20, 2022 this case was sent to the Executive Committee for reassignment. (Cons. Dkt. No. 51). That same day, the case was reassigned to the calendar of Magistrate Judge M. David Weisman, pursuant to Local Rule 73.1. (Dkt. No. 51).

### B. Settlement Negotiations

In January 2022, Defendants produced 1881 pages of pay and labor records for the 19 members of the instant case. Plaintiffs' counsel not only had to review, analyze, and manipulate this data, but then had to confer with all class members to determine individualized damages. (Dkt. No. 36 ¶ 5). One class member was deceased and another could not be reached despite repeated efforts, but Plaintiffs' counsel was able to confer with 17 class members. (*Id.*). Through client conferences, data analysis, and the application of formulas, Plaintiffs were able to propound a demand to Defendants for this case on May 20, 2022. (*Id.*). On September 20, 2022 the parties engaged in a settlement conference with Magistrate Judge Weisman to attempt to resolve both this case and the related matter of *Hankes v. Krapils*, Case No. 2020-cv-04989. (Cons. Dkt. No. 55).

While the parties were unable to reach a settlement during that conference, substantial movement was made in the settlement process. (*Id.*).

Over the next few months, the Parties engaged in comprehensive settlement negotiations via phone and email correspondence. *See* **Exhibit B**, Declaration of Anna M. Ceragioli ("Ceragioli Decl.") ¶ 8. The Parties ultimately reached an agreement on the settlement amount and the structure of the settlement, executing a Settlement Term Sheet on December 9, 2022. *Id.* Over the next two months, the Parties negotiated the remaining terms of the settlement, which were memorialized in the formal Settlement Agreement executed in full on February 28, 2023. *Id.* This settlement provides for substantial monetary relief for the Representative Plaintiffs and Opt-In Plaintiffs. *Id.* ¶ 9.

While the Representative Plaintiffs believed their liability case was strong, they recognized that a complete victory on every aspect of their claim, including the measure of damages, was far from certain. The Parties also took into account the costs and risks associated with further litigation, and the benefits, certainties, and judicial economies associated with resolving a complex case before dispositive motion practice and possible trial. As a result, the Parties negotiated a global resolution of this dispute. *See* Settlement Agreement.

## II.     SUMMARY OF THE SETTLEMENT TERMS

The terms of this settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Plaintiffs and Defendants. Ceragioli Decl. ¶ 10.

### A.     The Settlement Payment

To avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties agreed to the Settlement Payment set forth in the attached Settlement Agreement. Settlement Agreement ¶ 6. The Settlement Payment covers: (1) all

attorneys' fees and costs in connection with Plaintiffs' counsel's representation of Plaintiffs, including all attorneys' fees and costs that may arise in the future in connection with the Settlement Agreement, including, without limitation, seeking Court approval of the Settlement Agreement; (2) all payments to Representative Plaintiffs and Opt-In Plaintiffs; and (3) a service payment to the Representative Plaintiffs. *Id.*

### B. Settlement Collective Members

Plaintiffs eligible to receive a settlement payment are two Representative Plaintiffs and the 17 Opt-In Plaintiffs entitled to damages (Adam Valentinas, Aleksandra Piotrowski, Alex Szafoni, Ben Szafoni, Brennan McCorkle, Brianna Mellenthin, Brent Kosty, Dan Florian, Danielle Flores, Diego Acuna, Gustavo Valadez, Michael Grzanich, Nicholas Vanderham, Nicholas Demma, Rebecca VonBruchhaeuser, Samuel O'Reilly, and Timothy O'Brien). *Id.* ¶11-l.

### C. Releases

The Settlement Agreement provides that, upon entry of an order approving the settlement by the Court, the Representative Plaintiffs and Opt-In Plaintiffs will agree to:

> release and forever discharge Defendants and all Releasees, on behalf of themselves and each of their heirs, representatives, executors, assigns, and attorneys, from any and all causes of action or claims against Defendants and Releasees, whether premised upon statute, contract or common law, arising out of, relating to or connected with any alleged unpaid overtime violations arising under the Fair Labor Standards Act, Illinois Minimum Wage Law, and any other state or federal law pertaining to compensation, and any other claim(s) set forth in the in the Litigation, regardless of whether such causes of action or claims are known or unknown, filed or unfiled, asserted or unasserted, and/or existing or contingent. This Release of Claims does not constitute an admission by Defendants or the Released Parties of any violation of any law, statute, or regulation or breach of any agreement or promise, and the parties agree that neither the Release of Claims nor the furnishing of consideration shall be deemed or construed for any purposes as evidence or an admission of liability or wrongful conduct of any kind.

*Id.* ¶ 12.

### D. Calculation and Distribution of the Settlement Payment

Within fourteen business days following the Court's approval of the Settlement Agreement and receipt, Defendants shall distribute the Settlement Payment in accordance with the Settlement Agreement ¶ 14 to Class Counsel to each of the Plaintiffs who has submitted a IRS Form W-4 and to their attorneys upon submission of an IRS Form W-9. The distribution of the Settlement Payment designated for Plaintiffs is based on employee payroll data produced by Defendants and is allocated to each of the Plaintiffs based on this data, as well as individual calculations of each Plaintiffs' overtime. Each Plaintiff's total damages was divided into two payments: (1) one payment for alleged backpay damages subject to reporting on IRS Form W-2 and (2) one payment for alleged liquidated damages subject to reporting on IRS Form 1099. *Id.* ¶ 14(c). The Settlement Payment amounts are set forth in Settlement Agreement ¶ 14 (c).

### E. Service Payments to Scott Hankes and Evan Thompson

The Settlement Payment includes the distribution of a Service Payment to Representative Plaintiff Scott Hankes in the amount of $10,000 and Evan Thompson in the amount of $5,000 ($15,000 total), as payment for their efforts on behalf of the Opt-In Plaintiffs, including participation in the settlement conference and assisting Plaintiffs' counsel with the prosecution of the lawsuit. *Id.* ¶ 14 (e).

### F. Attorneys' Fees and Litigation Costs

The Parties negotiated and agreed to an award of attorneys' fees and costs in the gross amount of $71,500.00 for work performed in connection with this matter, as well as reasonable out-of-pocket litigation costs expended. *Id.* ¶ 14 (a-b). Plaintiffs represent that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Plaintiffs' counsel, their hourly rates, the risks undertaken, and the results achieved. Defendants take no position regarding the appropriateness of this fee award.

6

## III.     STANDARD GOVERNING MOTIONS TO APPROVE FLSA SETTLEMENTS

In the Seventh Circuit, settlements of FLSA claims must be approved by a Court of competent jurisdiction. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355. When reviewing a proposed FLSA settlement, the district court must scrutinize the settlement for fairness and decide whether  the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA  provisions." *Id.* at 1353, 1355. If a settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

When FLSA cases are settled on a collective basis, courts in this district have held that a one-step settlement approval process is appropriate. *See Bainter v. Akram Investments, LLC*, No. 17-cv-7064, 2018 WL 4943884, at *2 (N.D. Ill. Oct. 9, 2018); *Briggs v. PNC Fin. Servs. Group, Inc.*, No. 15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

## IV.     APPROVAL OF THE SETTLEMENT IS APPROPRIATE.

The settlement reached by the Parties represents a fair, just, and reasonable resolution of

the claims alleged by Plaintiffs under the FLSA and IMWL and any remaining disputes between the Parties. The agreement reached is the result of extensive negotiations between the Parties to resolve this matter. The Settlement Amount agreed upon bears a reasonable and fair relationship to the amounts alleged by the Representative Plaintiffs and Opt-In Plaintiffs, and also takes into account the specific risks and uncertainties associated with this litigation. The Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients. Significantly, the Settlement Agreement provided for monetary relief for all Plaintiffs, including each of the 17 Opt-In Plaintiffs.

### A. *Bona Fide* Disputes Exist.

The settlement of the instant action involves a *bona fide* dispute. Plaintiffs maintain that Defendants encouraged Plaintiffs to record hours in excess of forty in any given workweek as hours worked in subsequent weeks, and alternatively, paid hours in excess of forty in given workweeks as straight-time payments, in violation of the overtime provisions of the FLSA and IMWL. On liability, Plaintiffs would have to overcome Defendants' legal and factual defenses, including, but not limited to, its arguments that it complied with the FLSA and IMWL, that the individually named Defendants are not "employers" under the FLSA and IMWL, and, to the extent they did not comply, that any violations were not intentional.

As in any complex action, the Plaintiffs generally face uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"). In addition, a trial on the merits would involve significant risks for Plaintiffs as to damages. *Bona fide* disputes exist as to whether the Representative Plaintiffs and the Opt-In Plaintiffs could establish the hours of overtime they worked and the weeks in which they worked

overtime.

### B.    The Settlement Is Fair and Reasonable.

In determining whether a settlement is fair and reasonable, courts have considered non-exclusive factors such as: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Plaintiffs to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the action through the trial; (7) the ability of the Defendants to withstand a larger judgment; (8) the range of reasonableness of the Settlement Payment in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Payment in light of all the risks of litigation." *Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011).

The Parties' settlement is fair and reasonable and meets all applicable factors considered by courts. The settlement appropriately factored in the complexity, risk, expense, likely duration of the litigation, and the range of reasonableness of the Settlement Payment in light of the best possible recovery. *See* Settlement Agreement ¶ 8.

Moreover, the settlement is appropriate at this stage of the proceedings. As set forth above, Defendant produced substantial documents and Plaintiffs conducted a substantial review of these documents and consulting with each of the individual Plaintiff regarding damages. The Parties also participated in a formal settlement conference with the Court, which involved the exchange settlement demand letters and exhibits supporting the Parties' positions in advance of the conference. Plainly, the Parties had more than sufficient information to assess the risks of liability and damages.

9

Additionally, the settlement is well within the range of possible recovery. As in all wage and hour claims, particularly in the collective action context, the nature and amount of recoverable damages was uncertain. Even if a trier of fact ultimately found liability, a range of possible damages existed depending on factors including, but not limited to, the Parties and their witnesses' credibility, the limitations in the available data tracking work performed, the applicable statute of limitations, and Defendants' knowledge, willfulness and good faith. Taking these considerations into mind, the amount of the settlement is appropriate in relation to the potential recovery and risks.

The settlement is based on a review of the total number of hours a week recorded by each individual Opt-In Plaintiff and the two Representative Plaintiffs, the number of hours of straight-pay overtime paid to all Plaintiffs, and the Plaintiffs best reasonable estimates of overtime worked. The amount includes additional service payments of $10,000 to Scott Hankes and $5,000 to Evan Thompson, who personally devoted considerable time to the prosecution of the lawsuit, including but not limited to providing information during initial case investigation, providing declarations, participating in written discovery, and participating in the settlement conference.

Based on the aforementioned factors, the Parties conclude that a settlement on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, in the best interests of the Parties, and not worth the costs and risks associated with a trial. As part of the Settlement Payment, the Parties have agreed that Plaintiffs' counsel will receive $71,500.00 in attorneys' fees and recoverable costs, a sum Plaintiffs' counsel represents is consistent with the attorney-client agreement executed by the Representative Plaintiffs. Defendants take no position regarding the fees and costs. In sum, the Settlement Agreement constitutes a fair and reasonable settlement of

all claims consistent with abundant precedent, and the interests of judicial economy support approval of the Settlement Agreement.

## CONCLUSION

For the reasons set forth above, the Parties respectfully request an order: (1) approving the Settlement Agreement, releasing the claims of each of the 19 individual Plaintiffs' Claims, and authorizing the payments to eligible Plaintiffs, including the service payments to Representative Plaintiffs Scott Hankes and Evan Thompson, and the payment of attorneys' fees and costs set forth therein; (2) dismissing the action in its entirety without prejudice as to each of the 17 Opt-In Plaintiffs and 2 Representative Plaintiffs; (3) retaining jurisdiction only for the purpose of enforcing payment of the Settlement Payment; and (4) providing that the dismissal will convert to a dismissal with prejudice following a joint notice of settlement to be submitted by the Parties within seven days of Class Counsel's receipt of the settlement fund payments. *See* Proposed Approval Order and Final Judgment attached hereto as **Exhibit C**.

Dated: March 10, 2023           Respectfully Submitted,

*/s/ Anna M. Ceragioli*

Ryan F. Stephan
James B. Zouras
Anna M. Ceragioli
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
(312) 233-1550
(312) 233-1560 (fax)
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aceragioli@stephanzouras.com

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Brian S. Schwartz*
Joshua D. Holleb
Michael A. Paull
Brian S. Schwartz
Klein, Paull, Holleb & Jacobs, Ltd.
660 LaSalle Place, Suite 100
Highland Park, IL 60035
(847) 681-9100
jdh@labor-law.com
map@labor-law.com
brian.schwartz@labor-law.com

**ATTORNEY FOR DEFENDANTS**

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 10, 2023 she electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

*/s/ Anna M. Ceragioli*